**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CLAYTON ROGERS,

      Petitioner,

v.                                                              Case No. 8:13-cv-2368-T-27EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner Clayton Rogers, an inmate in the Florida Department of Corrections proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1).  Respondent filed a response (Dkt. 10), in which it contends that the petition is untimely and alternatively argues that the petition is without merit.  Petitioner did not file a reply.  Upon review, the petition must be denied.

### PROCEDURAL HISTORY

Petitioner was convicted of two counts of trafficking in hydrocodone.  (Dkt. 12, Ex. 3.)  He was sentenced to concurrent mandatory terms of 25 years in prison.  (Dkt. 12, Ex. 4.)  The state appellate court *per curiam* affirmed on direct appeal.  (Dkt. 12, Ex. 7.)  Petitioner filed a state habeas petition alleging ineffective assistance of appellate counsel.  (Dkt. 12, Ex. 8.)  The state appellate court denied the petition and Petitioner's motion for rehearing.  (Dkt. 12, Exs. 9, 10.)

Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which the state court denied.  (Dkt. 12, Exs. 11, 12.)  His motion for rehearing was also

denied.  (Dkt. 12, Ex. 13.)  Upon granting Petitioner a belated collateral appeal, the state appellate court *per curiam* affirmed the order denying postconviction relief.  (Dkt. 12, Exs. 19, 20, 21.) Petitioner's motion for rehearing was denied.  (Dkt. 12, Ex. 20.)

## TIMELINESS OF FEDERAL HABEAS PETITION

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides a one-year period of limitation for filing a § 2254 federal habeas petition.  This period runs from the later of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The limitation period is tolled for "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending. . ." 28 U.S.C. § 2244(d)(2).

Petitioner's convictions were affirmed by the state appellate court on September 8, 2010. They became final 90 days later, on December 7, 2010, upon the expiration of the time to file a petition for writ of certiorari.  *Clay v. United States*, 537 U.S. 522, 527 (2003); *Bond v. Moore*, 309 F.3d 770, 774 (11th Cir. 2002).  After the one-year AEDPA limitation period began running the next day, 276 days of un-tolled time passed before Petitioner filed his state habeas petition on September 9, 2011.   The limitation period was tolled until the state appellate court denied rehearing on November 4, 2011.

The limitation period began to run again the next day.  Another 32 days of un-tolled time, for a total of 308 days, passed before Petitioner filed his Rule 3.850 motion on December 6, 2011. The state court denied relief, and subsequently denied Petitioner's motion for rehearing on February 10, 2012.  Petitioner did not properly file a timely notice of appeal.  To have tolling effect, an application must be "properly filed."  An application is properly filed "when its delivery and

acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted).

In seeking a belated appeal, Petitioner explained that he filed the notice of appeal in the wrong court on February 12, 2012.  (Dkt. 12, Ex. 17, p. 2.) He also pointed out that Florida Rule of Appellate Procedure 9.040(b)(1) provides that "[i]f a proceeding is commenced in an inappropriate court, that court shall transfer the cause to an appropriate court."  (Id., p. 3.)  However, a document that is not filed with the court having jurisdiction is not "properly filed" to toll the AEDPA limitation period, even if the receiving court has a duty to transfer the document to the court with jurisdiction. *See Sibley v. Culliver*, 377 F.3d 1196, 1203 (11th Cir. 2004) ("[T]he application was not filed *properly* since it was delivered to the wrong court, regardless of whether the Alabama Supreme Court had a duty to correct Sibley's error.") (emphasis in original).

Therefore, Petitioner's AEDPA limitation period began running again on March 12, 2012, after the expiration of his 30-day time period to file a proper notice of appeal upon the denial of his postconviction motion for rehearing.  Fifty-seven days remained in the limitation period, meaning that it expired on May 7, 2012.  However, the federal habeas petition was not filed until September 8, 2013.  The record reflects no other tolling applications filed in state court prior to May 7, 2012.[1] Because the AEDPA limitation period expired before Petitioner filed his federal habeas petition, the petition is time-barred unless Petitioner can demonstrate the applicability of equitable tolling, *see Holland v. Florida*,  560 U.S. 631, 645 (2010) or that he is actually innocent, *see McQuiggin v.*

---

[1] Petitioner did not file his petition for belated collateral appeal until July 10, 2012.  (Dkt. 12, Ex. 15.)

*Perkins*, __ U.S. __, 133 S.Ct. 1924, 1928 (2013).   He does not allege or show that either circumstance is present.   Accordingly, the federal habeas petition is time-barred.   Even if the petition was timely, however, it is without merit.   The merits of Petitioner's claims are addressed below.

## STANDARD OF REVIEW

Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal

habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . .") (citations omitted).

In decisions without written opinions, the state appellate court affirmed Petitioner's

judgments and sentences, denied his state habeas petition, and affirmed the rejection of postconviction relief.  These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Review of the state court decision is limited to the record that was before the state court.  *Pinholster,* 563 U.S. at 180-81.

Petitioner bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice.   Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.   Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the

exercise of reasonable professional judgment." *Id*.   Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*.

Petitioner must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691-92.   To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91.   A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.   Nor is the test even what most good lawyers would have done.   We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . .   We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).   *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.   So, omissions are inevitable.   But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Ground One**

Petitioner claims that his motion for judgment of acquittal should have been granted on the basis of subjective entrapment, which he raised as a defense in this case.  In support of his claim, Petitioner relies on his direct appeal brief.  There, he presented this issue as a state law question. Florida recognizes the defense of subjective entrapment, set forth in § 777.201, Fla. Stat.  A subjective entrapment defense may be available to a defendant who establishes by a preponderance of the evidence that he was induced by a government agent to commit an offense, and establishes a lack of predisposition to commit the offense.  *State v. Henderson*, 955 So.2d 1193, 1194 (Fla. 4th DCA 2007).

At trial, Detective Brian Bender testified that a confidential informant ("CI") stated he knew someone named Clayton Rogers who could sell drugs. (Dkt. 12, Ex. 2, Vol. I, p. 140.)  Bender

testified that, after arranging transactions through the CI, Bender bought hydrocodone from Petitioner on two occasions. (Dkt. 12, Ex. 2, Vol. I, pp. 138-47, 164-68; Vol. II, p. 249.) Petitioner testified that during the first transaction, he sold hydrocodone pills to the CI only after the CI contacted him multiple times and said he needed the pills for his sick father. (Dkt. 12, Ex. 2, Vol. II, pp. 229-32, 236-39.) Petitioner testified that he got the drugs from another person whom he did not know. (Id., pp. 236-37.) He testified that this was the first and only transaction. (Id., p. 233.) Petitioner testified that he did not know the price of hydrocodone and that he would not have engaged in the transaction if not for the CI. (Id., pp. 234-35.) He denied participating in the second transaction. He stated that he merely introduced the CI to the supplier of the hydrocodone. (Id., pp. 233, 239, 242.)[2]

Bender testified that he was not personally aware of whether Petitioner was the subject of an investigation or previously sold drugs, and located no other "narcotics information" on him. (Dkt. 12, Ex. 2, Vol. I, pp. 175, 198.) However, the State argued that the evidence showed Petitioner was predisposed to traffic in hydrocodone because he was twice able to quickly produce hydrocodone when CI called him for drugs; he sold the hydrocodone for its street value, and during the second transaction determined the amount of pills based on what Bender indicated he could pay; and he stated to the CI and Bender that he had told them he would get them "quantity," meaning he was capable of producing large amounts of the drug.[3] (Dkt. 12, Ex. 2, Vol. II, pp. 285-88, 294-95.)

---

[2] The jury instruction on entrapment did not differentiate between counts one and two. (Dkt. 12, Ex. 2, Vol. III, pp. 350-53.) The State argued that this theory was inapplicable to count two because Petitioner denied committing that offense. (Dkt. 12, Ex. 2, Vol. II, pp. 283-84.)

[3] Bender testified that Petitioner's statement "I told you guys you were going to get quantity" meant that "you'd get a large amount, more bang for your buck." (Dkt. 12, Ex. 2, Vol. I, p. 161.) But Petitioner testified that "I told him I just told the guy they said they wanted quantity." (Dkt. 12, Ex. 2, Vol. II, p. 231.)

Petitioner's attempt to challenge the trial court's ruling based on the subjective entrapment defense as set forth in Florida law presents a state law issue for which federal habeas jurisdiction does not lie.  Federal habeas relief is only available if a state prisoner is in custody in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a).  "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension." *Wainwright v. Goode*, 464 U.S. 78, 83 (1983).  Accordingly, a claim that only presents a question of state law is not cognizable in a federal habeas petition.  *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

On appeal, Petitioner cited one opinion of the United States Supreme Court, *Sherman v. United States*, 356 U.S. 369 (1958).   (Dkt. 12, Ex. 5, pp. 16-17.)  Even liberally construing his habeas petition and appellate brief to have raised a federal question by citing *Sherman*, however, Petitioner is not entitled to relief because his claim still fails to state a federal constitutional deprivation.  *United States v. Russell*, 411 U.S. 423 (1973) explains that entrapment was recognized as a defense in *Sorrells v. United States*, 287 U.S. 435 (1932) and reaffirmed in *Sherman*.  The defense focuses on the defendant's predisposition to commit the crime.  *Russell*, 411 U.S. at 433. But the entrapment defense addressed in these cases is not constitutional in nature.

The Supreme Court rejected Russell's argument to "broaden the nonconstitutional defense of entrapment" addressed set forth in *Sorrells* and reaffirmed in *Sherman*.  *Id.* at 432-33.   The *Russell* opinion explained that because "the defense is not of a constitutional dimension," its definition would be properly addressed by Congress.  *Id.* at 433.  *Russell* also denied a request to reconsider the entrapment theory as one of constitutional dimension in instances when law enforcement's involvement can be said to violate fundamental principles of due process.  *Id.* at 430-

32.  Accordingly, Petitioner's subjective entrapment claim does not raise any federal constitutional violation.  *See also Sairras v. Fla. Dep't of Corr.*, 496 Fed. App'x 28, 35 (11th Cir. 2012) ("It is well-settled that the defense of entrapment is not of constitutional dimension.") (citing *Russell*, 411 U.S. at 433).  Ground One warrants no relief.

**Ground Two**

In Ground Two, Petitioner alleges that appellate counsel was ineffective.  Claims of ineffective assistance of appellate counsel are analyzed under the *Strickland* standard.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim, Petitioner must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, Petitioner would have prevailed on his appeal.  *Robbins*, 528 U.S. at 285-86.

Petitioner claims that appellate counsel was ineffective for failing to argue on direct appeal that the trial court should have *sua sponte* dismissed the charging document due to objective entrapment or subjective entrapment.  In addition to the defense of subjective entrapment, Florida recognizes objective entrapment as a bar to prosecution.  The "'[o]bjective entrapment analysis focuses on the conduct of law enforcement' and 'operates as a bar to prosecution in those instances where the government's conduct 'so offends decency or a sense of justice' that it amounts to a denial of due process.'" *Henderson*, 955 So.2d at 1194 (quoting *Davis v. State*, 937 So.2d 300, 302 (Fla. 4th DCA 2006)).

In support, Petitioner refers to his state habeas petition.  But there, he cites no authority providing that the court could have *sua sponte* dismissed the charges on the basis of either objective or subjective entrapment.  Moreover, he provides no specific factual allegations or argument

explaining how either theory of entrapment applied to his case.  Additionally, Petitioner does not

establish that the issue of the court's failure to *sua sponte* dismiss the charges was ever raised and

preserved for appeal, or that it constituted fundamental error that could have been raised for the first

time in appellate proceedings.  *See F.B. v. State*, 852 So.2d 226, 229 (Fla. 2003) ("In general, to raise

a claimed error on appeal, a litigant must object at trial when the alleged error occurs. . . . The sole

exception to the contemporaneous objection rule applies where the error is fundamental.").[4]

Accordingly, Petitioner fails to show that appellate counsel was deficient for not raising this

issue, or that there is a reasonable probability he would have prevailed on appeal had counsel brought

the claim.  Because Petitioner does not establish that the state appellate court's rejection of relief was

contrary to or an unreasonable application of clearly established federal law, he is not entitled to

relief on Ground Two.

**Ground Three**

Petitioner claims that appellate counsel was ineffective for failing to argue that the trial court

erred in denying his motion for judgment of acquittal based upon objective entrapment under Florida

law.  In support of this claim, Petitioner refers to the argument presented in his state habeas petition.

There, he recognizes that Florida's objective entrapment analysis centers on government conduct,

but presents no facts or argument to support the contention that such conduct occurred in his case.

As he does not establish any basis for the applicability of an objective entrapment bar to prosecution

in Ground Three, Petitioner does not show that appellate counsel was ineffective for not raising this

---

[4] Typically, appellate counsel is not ineffective for failing to raise an issue that was not preserved for appeal. *See Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992) ("[A]ppellate counsel rendered effective assistance because he either properly argued Atkins' claims on appeal or he was prohibited from raising on appeal issues that had not been preserved for appeal at the trial level.").

claim on appeal.   Nor does Petitioner show that there is a reasonable probability he would have succeeded on appeal had counsel raised the claim.   Therefore, he does not establish that the state appellate court's decision was contrary to or an unreasonable application of clearly established federal law.   Accordingly, Ground Three warrants no relief.

**Ground Four**

Petitioner argues that appellate counsel was ineffective for not challenging the constitutionality of the statute under which he was convicted.   In support, he cites *Shelton v. Sec'y, Dep't of Corr.*, 802 F.Supp.2d 1289 (M.D. Fla. 2011).   *Shelton* held § 893.13, Fla. Stat., as amended by § 893.101, Fla. Stat.,[5] unconstitutional on its face.   Section 893.13, Fla. Stat., concerns the sale, manufacture, delivery, and possession of controlled substances.

Petitioner's claim is without merit.   He concedes he was convicted of trafficking under § 893.135, Fla. Stat., a different statute.   And as Petitioner acknowledges, *Shelton* was not issued until after the disposition of his case.   Petitioner's judgments and sentences were affirmed on direct appeal in 2010, but the *Shelton* decision upon which he relies was entered in 2011.   Furthermore, this decision was later reversed, *see Shelton v. Sec'y, Dep't of Corr.*,   691 F.3d 1348 (11th Cir. 2012), and the Florida Supreme Court held that § 893.13, Fla. Stat. is constitutional in *State v. Adkins*, 96 So.3d 412 (Fla. 2012).

Petitioner fails to establish a basis for appellate counsel to have argued that the statute under which he was convicted was unconstitutional, even assuming that a facial challenge to the constitutionality of § 893.135, Fla. Stat., could have been raised for the first time on appeal.   Nor

---

[5] Section 893.101(2), Fla. Stat. provides: "The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter.   Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter."

does he show a reasonable probability that his appeal would have been successful had counsel done so.  Petitioner does not meet either prong of *Strickland*.  Therefore, he does not demonstrate that the state court's decision was an unreasonable application of or contrary to clearly established federal law.  Petitioner is not entitled to any relief on Ground Four.

**Ground Five**

Petitioner alleges, without raising ineffective assistance of counsel, that his convictions and sentences are invalid because the statute under which he was convicted is unconstitutional.  He relies heavily on *Shelton*, 802 F.Supp.2d 1289.  Petitioner's claim is liberally construed as raising a federal issue.  The state court denied this claim when Petitioner raised it in his postconviction motion:

> Contrary to Defendant's assertion, the holding in *Shelton* was limited to convictions under section 893.13.  However, the record reflects the jury found Defendant guilty of trafficking in illegal drugs; a violation of section 893.135.  In order to be convicted under section 893.135, the State must prove beyond a reasonable doubt that a defendant "*knowingly* s[old], purchase[d], manufacture[d], deliver[ed, or br[ought] into th[e] state, or [was in] *knowing*[] . . . actual or constructive possession of" a controlled substance.  *See* § 893.135, Fla. Stat. (2005) (emphasis added). Accordingly, Defendant is entitled to no relief under the holding in *Shelton*. [FN]

> > [FN] It should be noted that even if this Court applied *Shelton's* holding to the facts in the instant case, Defendant would not be entitled to the relief he seeks.  *See Burnette v. State*, 901 So.2d 925, 927-28 (Fla. 2d DCA 2005); *Maestas v. State*, 4D09-5349, 2011 WL 5964337, at *2 (Fla. 4th DCA 2011); *Adams v. State*, 3D11-2946, 2011 WL 6372968 at *1 (Fla. 3d DCA 2011); *Holcy v. State*, 5D10-3437, 2011 WL 5299328 (Fla. 5th DCA 2011); *Flagg v. State*, 1D11-2372, 2011 WL 4865137, at *1 (Fla. 1st DCA 2011); *Taylor v. State*, 929 So.2d 665 (Fla. 3d DCA 2006).

(Dkt. 12, Ex. 12, p. 2.)  The state court determined that *Shelton* was inapplicable to Petitioner's

trafficking convictions under § 893.135, Fla. Stat.,[6] and cited numerous cases finding that § 893.13, Fla. Stat., is constitutional.  Petitioner does not show that the court's rejection of his claim was contrary to, or an unreasonable determination of, clearly established federal law.  Accordingly, Ground Five warrants no relief.

**Grounds Six and Seven**

Petitioner argues that counsel was ineffective because he did not file a motion to dismiss the charges or seek a downward departure sentence due to sentence manipulation.  Petitioner claims that sentence manipulation occurred under Florida law because Detective Bender directed the CI to ask Petitioner for "a trafficking amount" of hydrocodone.  Petitioner asserts that counsel became aware of this when he deposed Bender.  He raised both of these allegations in ground two of his postconviction motion. The state court rejected this ground:

> Next, Defendant alleges his trial counsel was ineffective for failing to file a motion to dismiss based on sentence manipulation.  According to Defendant, had trial counsel filed this motion, the trial court would have been "almost absolutely certain" to have either imposed a downward departure sentence or dismissed the case entirely.
>
> In order to put forth a successful claim of sentence manipulation, the defendant must show that law enforcement personnel continued the sting operation for the sole purpose of enhancing the defendant's sentence.  *State v. Steadman*, 827 So.2d 1022, 1024-25 (Fla. 3d DCA 2002) ("The State has offered no legitimate law enforcement purpose for the police conduct whose only purpose was to increase the severity of Steadman's sentence.").  Additionally, the defendant must demonstrate he received a harsher sentence as a result of law enforcement's actions.  *Id.* at 1025-26 ("An important consideration in our decision is the fact that the judge imposed a sentence harsher than the guideline sentence had Steadman been arrested after the first sale.").
>
> According to Defendant, the arresting officer engaged in sentence manipulation by seeking an amount of hydrocodone large enough to obtain a drug trafficking charge.  Indeed, when examined at trial, the arresting officer testified he

---

[6] The state court's order was entered on January 17, 2012, prior to the reversal of *Shelton* and the Florida Supreme Court's decision in *Adkins*.

instructed his informant to ask for a quantity of pills sufficient to secure a drug trafficking charge. (*See* Exhibit C: Trial Transcript p. 176.) However, this does not amount to sentence manipulation under holding [sic] of *Steadman*. In *Steadman*, the Third District Court of Appeal held that where police officers chose to forego arresting the defendant on multiple occasions over the course of two months for the sole purpose of securing a long prison sentence, a downward departure sentence was appropriate. *Steadman*, 827 So.2d at 1024. Additionally, the court held its holding was "predicated on the fact that the sentence imposed did not go below what [Defendant] would have received in the absence of the sentence manipulation." *Id.* at 1025-26.

Unlike the defendant in *Steadman*, Defendant does not claim the arresting officer continued to accumulate additional charges for the sole purpose obtaining [sic] a harsher sentence. Instead, Defendant alleges it was the quantity of drugs sought by the police officer that constituted sentence manipulation. The court in *Steadman* was concerned with the police repeatedly refraining from arresting an individual for no reason other than to increase the aggregate amount of illegal drugs; thus increasing the severity of the sentence the individual would receive. *Id.* at 1025. However, the arresting officer in the instant case did not engage in that type of conduct. While the officer did seek a specific quantity of hydrocodone from Defendant on two separate occasions, the aggregate amount of pills was of no consequence as both instances were independently sufficient to support a charge of drug trafficking.

Additionally, Defendant's sentence was unaffected by the alleged acts of sentence manipulation. While Defendant was charged and convicted with two counts of drug trafficking stemming from two separate incidents, the trial court imposed two concurrent sentences; essentially amounting to the same sentence Defendant would have received if convicted of only a single count of drug trafficking. *See* § 893.135(1)(c)1.a., Fla. Stat. (2005); *see also Kelley v. State*, 821 So.2d 1255, 1257 (Fla. 4th DCA 2002) (holding that absent a recommendation from the State, the trial court may not depart from the statutorily mandated minimum mandatory sentence in a drug trafficking case). Consequently, had Defendant been arrested and charged following the first instance he would have received the same punishment the trial court imposed in the instant case.

The record demonstrates that even if Defendant's trial counsel had filed a motion to dismiss based on sentence manipulation, the trial court likely would have judged it meritless. Because trial counsel cannot be deemed ineffective for failing to file meritless motions, Defendant's . . . claim provides him no relief. *See McCree v. State*, 982 So.2d 1278, (Fla. 2d DCA 2008); *Ramos v. State*, 559 So.2d 705, 706 (Fla. 4th DCA 1990); *Evans v. State*, 975 So.2d 1035, 1054 (Fla. 2007).

(Dkt. 12, Ex. 12, pp. 3-4.)

Petitioner raised the issue of sentence manipulation as one of state law. Based on the

definition of sentence manipulation set forth in *Steadman*, a Florida decision, the state court determined that Petitioner failed to establish that sentence manipulation occurred in his case and that a motion to dismiss would have had no likelihood of success.   A federal habeas court must defer to a state court's interpretation and application of state law.   *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).   Accordingly, Petitioner does not establish that counsel was ineffective for not asserting that the case should be dismissed due to sentence manipulation.   *See Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

Nor does Petitioner show that counsel was ineffective for failing to request a downward departure sentence.   The 25-year sentences Petitioner received were mandatory under Florida law. *See* § 893.135(1)(c)1.c., Fla. Stat. (2006) (providing that an offender guilty of trafficking in 28 grams or more, but less than 30 kilograms, of hydrocodone "shall be sentenced to a mandatory minimum term of imprisonment of 25 calendar years.").[7]   The  postconviction court cited Florida authority

---

[7] The amount of hydrocodone purchased in one transaction was 55.4 grams and the amount of hydrocodone purchased in the other transaction was 31.6 grams.   (Dkt. 12, Ex. 2, Vol. II, pp. 211-12.)   "[A] criminal sentence is governed by the laws in effect at the time of the offense."   *Vonador v. State*, 857 So.2d 323, 324 (Fla. 2d DCA 2003).

providing that a sentencing court cannot depart from this mandatory term absent a recommendation from the State.  *See Kelley v. State*, 821 So.2d 1255 (Fla. 4th DCA 2002).  There was no such recommendation here. To the contrary, the State asked the court to impose the mandatory terms consecutive to one another.  (Dkt. 12, Ex. 2, Vol. III, p. 375.)  Moreover, as the resolution of this claim rests upon the interpretation or application of state law, again, deference must be given to the state court's determination.  *Herring*, 397 F.3d at 1354-55.

Petitioner does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.  Grounds Six and Seven warrant no relief.

**Ground Eight**

Petitioner claims that counsel should have argued objective entrapment in the motion for judgment of acquittal.  The state court rejected this claim when Petitioner raised it in his postconviction motion:

> Finally, Defendant claims trial counsel was ineffective for failing to raise the defense of objective entrapment in a motion for judgment of acquittal.  According to Defendant, trial counsel made a motion for judgment of acquittal based solely on subject [sic] entrapment.  However, contrary to Defendant's assertions, the trial transcripts reveal Defendant's trial attorney raised the issue of entrapment in two motions for judgment of acquittal; one at the close of the State's case-in-chief, and another prior to the case being submitted to the jury.  (*See* Exhibit D: Trial Transcript, pp. 214-16, 272-78.) The first motion for judgment of acquittal raised the issue of objective entrapment, which the trial court considered and denied. (*Id.* at 214-216.)  The second motion for judgment of acquittal again raised the entrapment issue, but the trial court again denied the claim of objective entrapment and ruled Defendant could present the issue of subjective entrapment to the jury.  (*Id.* at 272-278.)  Accordingly, Defendant's final claim is without merit as it is not supported by the record.

(Dkt. 12, Ex. 12, pp. 4-5.)

As the state court noted, counsel made two motions for judgment of acquittal in which he argued that Petitioner was entrapped.  (Dkt. 12, Ex. 2, Vol. II, pp. 214-15, 272-73.)  In neither

motion did counsel expressly raise objective entrapment.  But the record supports the postconviction court's conclusion that the trial court considered and rejected an objective entrapment theory with respect to both motions.  In rejecting the first motion, the court stated:

> The defense of entrapment as raised at this time is an objective standard that the Court has to look at.  Based on the facts and the evidence that have been presented on the record here today, I do not find an objective entrapment has occurred.
> However, that is certainly something that defense counsel can present to the jury as a subjective entrapment defense for the jury to make the determination.
> So your motion for judgment of acquittal is denied.

(Id., p. 216.)  When Petitioner again moved for a judgment of acquittal, the court concluded:

> Well, I'm not the seventh juror.  I don't step in and say [Petitioner is not guilty because of entrapment].  What I look at initially is as an objective standard based on all the facts and circumstances.  Of course, I have to take them in the light most favorable to the State.  Under the circumstances is this objective entrapment. I've made that ruling.  It's not.
> Now it's a jury question. . . . So I don't think that under the circumstances it's appropriate to grant a judgment of acquittal at this time.  I mean, you know, honestly, in many instances you have disputes of fact.  That's why we have juries.  That's why they're here to make those resolutions.  They're not mine.  So I'll deny your motion.

(Id., pp. 277-78.)

The trial court clearly interpreted counsel's arguments as invoking objective entrapment. Furthermore, the trial court recognized a distinction between the two theories, determined that the evidence presented did not show objective entrapment, and concluded that subjective entrapment was appropriate for Petitioner to argue before the jury as a defense to the State's charges.  Therefore, the record supports the state court's conclusion that the trial court rejected objective entrapment in response to counsel's motions.

To the extent Petitioner's claim can be construed as arguing counsel should have more specifically alleged that objective entrapment occurred because Detective Bender asked the CI to

obtain an amount of hydrocodone that would result in a trafficking charge, Petitioner presents no argument or authority that this amounted the type of police conduct that would support the application of a bar to prosecution.[8]  As Petitioner fails to show that this was a meritorious argument, he does not establish that counsel was deficient for not raising it or that there is a reasonable probability the outcome of trial would have been different had counsel done so.  Accordingly, Petitioner establishes neither prong of *Strickland*.  Petitioner does not show that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.  Ground Eight affords no relief.

It is therefore **ORDERED** that Petitioner's petition for writ of habeas corpus (Dkt. 1) is hereby **DENIED**.  The Clerk is directed to enter judgment against Petitioner and to close this case.[9]

It is further **ORDERED** that Petitioner is not entitled to a certificate of appealability ("COA").   A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(l).  A district court must first issue a COA.  *Id*.  Petitioner is only entitled to a COA if he demonstrates that reasonable jurists would find debatable whether the Court's procedural ruling was correct and whether the § 2254 petition stated "a valid claim of the denial of a constitutional right." *Id*.; *Slack* v. *McDaniel,* 529 U.S. 473, 484 (2000). To make a substantial showing of the denial of a constitutional right, Petitioner "'must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable

---

[8] The trial court rejected objective entrapment after hearing Bender's testimony that he asked the CI to obtain an amount of hydrocodone that would result in a trafficking charge.  (Dkt. 12, Ex. 2, Vol. I, p. 176; Vol. II, pp. 216, 277-78.)

[9] An evidentiary hearing is not warranted.  *See Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore  a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

or wrong,'" *Tennard* v. *Dretke,* 542 U.S. 274, 282 (2004) (quoting *Slack,* 529 U.S. at 484), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El* v. *Cockrell,* 537 U.S. 322, 335-36 (2003) *(quoting Barefoot v. Estelle,* 463 U.S. 880, 893 n.4 (1983)).

Petitioner cannot make the requisite showing because he cannot demonstrate that reasonable jurists would debate whether the determination that the petition is time-barred is correct, or whether the petition stated a valid claim of the denial of a constitutional right. And because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis.*

ORDERED in Tampa, Florida, on ___February   2nd___, 2016.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:mh
Copy to:
Pro se *Petitioner*
Counsel of Record

Page 21 of 21